1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10                        ----oo0oo----

11

12   JANE DOE,                        No. 2:24-cv-00899 WBS CKD

13           Plaintiff,

14      v.                            ORDER RE: MOTION TO DISMISS

15   COUNTY OF SAN JOAQUIN, SAN
     JOAQUIN SHERIFF'S OFFICE,
16   MICHAEL REYNOLDS (in his
     individual and official
17   capacities), and PATRICK WITHROW
     (in his official capacity),
18
             Defendants.
19

20                        ----oo0oo----

21          Plaintiff Jane Doe brings ten federal and state law

22   claims against San Joaquin County; the San Joaquin Sheriff's

23   Office; Deputy Sheriff Michael Reynolds, in both his personal and

24   official capacity; and Sheriff Patrick Withrow in his official

25   capacity.  (First Am. Compl. ("FAC") (Docket No. 6.)  These

26   claims center on allegations of serial sexual assault by

27   Reynolds.  Defendants now move for partial dismissal.

28

                              1

1    I.    Facts

2              As required on a motion to dismiss under Federal Rule

3    of Civil Procedure 12(b)(6) the court assumes the following

4    allegations to be true and draws all reasonable factual

5    inferences in plaintiff's favor.

6              While employed by the San Joaquin County Sheriff's

7    Office, plaintiff endured persistent sexual harassment and

8    assault by her supervisor, Sergeant Michael Reynolds.  (FAC ¶¶ 1,

9    6, 10-53.)  Plaintiff began working for the County in April 2019

10   as an office assistant in the communications department.  (Id. ¶

11   13.)  In July 2021, she transferred to a crime analyst position,

12   placing her under Reynolds's supervisory authority.  (Id. ¶¶ 19-

13   21.)

14             Reynolds allegedly began engaging in a disturbing

15   pattern of sexually harassing behavior, including sending

16   plaintiff videos of himself masturbating and images of his erect

17   penis while in uniform and in a Sheriff's Office vehicle (id. ¶

18   24), physically accosting her in elevators (id. ¶¶ 37-38), and

19   ultimately sexually assaulting her on multiple occasions (id. ¶¶

20   47-48.)  Plaintiff alleges that Reynolds threatened her with

21   termination, reputational ruin, and violence if she reported his

22   conduct.  (Id. ¶¶ 38, 41-42.)

23             Plaintiff further alleges that Reynolds's conduct was

24   enabled by the County's inadequate policies and practices

25   regarding sexual harassment prevention and response.  (Id. ¶¶ 1,

26   68-70, 98-101.)  She also alleges that the Sheriff's Office

27   failed to take disciplinary action against Reynolds or subject

28   him to criminal investigation after learning of his conduct (id.

1    ¶¶ 62-64), and that the office has a practice of requiring

2    employees to follow the chain of command when reporting

3    harassment (id. ¶ 60).

4          At all relevant times, Withrow was the Sheriff of San

5    Joaquin Sheriff's Office.  (Id. ¶ 5.)  In that capacity, he was

6    responsible for setting and enforcing policies regarding

7    personnel under his supervision, including Reynolds.  (Id.)

8          Plaintiff remains employed by the County but is on

9    disability/injury leave due to the allegations in the complaint.

10   (Id. ¶ 73.)

11   II.  Legal Standard

12         Federal Rule of Civil Procedure 12(b)(6) permits

13   dismissal when the plaintiff's complaint fails to state a claim

14   upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The

15   court must determine whether, accepting the complaint's

16   allegations as true and drawing all reasonable inferences in the

17   plaintiff's favor, the complaint has alleged "sufficient facts .

18   . . to support a cognizable legal theory."  Navarro v. Block, 250

19   F.3d 729, 732 (9th Cir. 2001).  The claim must be "plausible on

20   its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

21         The court "need not accept as true legal conclusions or

22   '[t]hreadbare recitals of the elements of a cause of action,

23   supported by mere conclusory statements.'"  Whitaker v. Tesla

24   Motors, Inc., 985 F.3d 1173, 1176 (9th Cir. 2021) (quoting

25   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

26   III. Discussion

27         Defendants move to dismiss plaintiff's "Monell claims,"

28   arguing that plaintiff fails to establish municipal liability for

                                    3

1    San Joaquin County or the Sheriff's Office.  See Monell v. Dep't

2    of Soc. Servs. of City of New York, 436 U.S. 658 (1978) (setting

3    forth municipal liability standard for claims asserted under 42

4    U.S.C. § 1983).  (See generally Mot.)  The court construes this

5    as a motion to dismiss plaintiff's two § 1983 claims as asserted

6    against San Joaquin County and the Sheriff's Office.

7         A.   Section 1983 Claim Against Reynolds (Claim 1)

8              Plaintiff's first claim asserts a § 1983 violation

9    against Reynolds in both his personal and official capacity.

10   (FAC ¶¶ 81-92.)  However, as plaintiff seeks only damages against

11   Reynolds (id. ¶¶ 91-92), the court construes this as a claim

12   against Reynolds in his personal capacity only.  See Mitchell v.

13   Washington, 818 F.3d 436, 442 (9th Cir. 2016) ("when a plaintiff

14   sues a defendant for damages, there is a presumption that he is

15   seeking damages against the defendant in his personal capacity").

16             Defendants' motion to dismiss this claim based on

17   Monell is accordingly misplaced.  In a personal-capacity suit,

18   the plaintiff seeks to impose personal liability on a government

19   official for actions taken under color of state law.  Kentucky v.

20   Graham, 473 U.S. 159, 165 (1985).  Monell liability, on the other

21   hand, applies to municipalities and local governing bodies, not

22   to individuals sued in their personal capacity.  See Monell, 436

23   U.S. at 690-91.  Therefore, the Monell requirements of an

24   official policy or custom do not apply to plaintiff's claim

25   asserted against Reynolds in his personal capacity.

26             Accordingly, the first claim, considered as a claim

27   against Reynolds in his personal capacity only, will not be

28   dismissed on Monell grounds.

                                4

1    B.    Section 1983 Claim Against Withrow (Claim 2)

2         Plaintiff's second claim asserts a § 1983 violation

3    against Withrow in his official capacity, seeking only injunctive

4    relief.  (FAC ¶¶ 93-103.)  This claim is properly analyzed under

5    Monell, as official-capacity suits "generally represent only

6    another way of pleading an action against an entity of which an

7    officer is an agent."  Monell, 436 U.S. at 690 n.55.

8         Under Monell, plaintiff must demonstrate that a policy

9    or custom of the governmental entity was the moving force behind

10   the constitutional violation.  See Hafer v. Melo, 502 U.S. 21, 25

11   (1991); Graham, 473 U.S. at 166.  Here, plaintiff's allegations

12   implicate two related theories of Monell liability: (1) failure

13   to train, and (2) a custom of failing to punish sexual offenders.

14   (FAC ¶¶ 98-99.)

15        1.    Failure to Train

16        "A municipality's culpability for a deprivation of

17   rights is at its most tenuous where a claim turns on a failure to

18   train."  Connick v. Thompson, 563 U.S. 51, 61 (2011) (citation

19   omitted).  Such a claim requires showing that (1) the training

20   program was inadequate "in relation to the tasks the particular

21   officers must perform"; (2) city officials were deliberately

22   indifferent "to the rights of persons with whom the [local

23   officials] come into contact"[1]; and (3) the inadequacy of the

24   _____

25        [1]    See also Connick, 563 U.S. at 61 ("To satisfy the
     statute, a municipality's failure to train its employees in a
26   relevant respect must amount to 'deliberate indifference to the
     rights of persons with whom the [untrained employees] come into
27   contact.' [] Only then 'can such a shortcoming be properly
     thought of as a city 'policy or custom' that is actionable under

28

training "actually caused" the constitutional deprivation at
issue.  <u>Merritt v. County of Los Angeles</u>, 875 F.2d 765, 770 (9th
Cir. 1989) (internal citations omitted).

   Plaintiff's claim, insofar as it is premised on a
failure to train theory, is deficient for at least two reasons.
First, nothing in the complaint suggests that the need to change
or implement additional sexual harassment training was "so
obvious, and the inadequacy so likely to result in the violation
of constitutional rights," that Withrow's inaction as to training
amounted to an affirmative policy choice that expressed
deliberate indifference to plaintiff's constitutional rights.
<u>City of Canton v. Harris</u>, 489 U.S. 378, 390 (1989).  While
plaintiff alleges a general history of sexual misconduct towards
women in the Sheriff's Office (FAC ¶ 67) and past complaints
about Reynolds from other employees (<u>id.</u> ¶ 68), this alone is
insufficient to show that the municipality was on notice of a
need for more or different personnel training.[2]  To hold
otherwise would risk letting "municipal liability under § 1983
collapse into <u>respondeat superior</u>."  <u>Bd. of Cty. Comm'rs of Bryan
Cnty., Okl. v. Brown</u>, 520 U.S. 397, 410 (1997).

  Second, plaintiff fails to allege sufficient facts
suggesting that inadequacy of the training actually caused

---

§ 1983.'" (quoting <u>City of Canton v. Harris</u>, 489 U.S. 378, 388
(1989))).

   [2] <u>See also Connick</u>, 563 U.S. at 62 ("A pattern of similar
constitutional violations by untrained employees is 'ordinarily
necessary' to demonstrate deliberate indifference for purposes of
failure to train" (citing <u>Bd. of Cty. Comm'rs of Bryan Cnty.,
Okl. v. Brown</u>, 520 U.S. 397, 409 (1997))).

1  Reynolds's conduct.  Rather, plaintiff's allegations suggest that

2  Reynolds acted with a clear disregard for consequences that no

3  training would remediate, as indicated by his alleged comments

4  that plaintiff (a "'new civilian girl'"), not Reynolds (a

5  "'seasoned Sergeant'"), would face adverse consequences were she

6  to report Reynolds.[3]  (FAC ¶ 41.)

7          2.   Custom of Failing to Discipline

8          However, plaintiff's allegations sufficiently allege a

9  Monell claim under a customary failure to discipline theory.

10 Under this theory, plaintiff must allege a practice that is so

11 "persistent and widespread" that it constitutes a "permanent and

12 well settled city policy."  Trevino v. Gates, 99 F.3d 911, 918

13 (9th Cir. 1996) (citing Monell, 436 U.S. at 691).

14         Plaintiff makes several allegations that, taken

15 together, plausibly suggest such a custom.  First, she alleges

16 that the Sheriff's Office failed to take any disciplinary action

17 against Reynolds or refer him to criminal investigation after

18 learning of his conduct.  (FAC ¶¶ 62-64.)  See Hunter v. County

19 of Sacramento, 652 F.3d 1225, 1233 (9th Cir. 2011) (custom can be

20 inferred from evidence of repeated constitutional violations for

21 which the errant municipal officers were not discharged or

22

23         [3]   See also Flores v. Cnty. of Los Angeles, 758 F.3d 1154,
   1160 (9th Cir. 2014) ("There is, however, every reason to assume

24 that police academy applicants are familiar with the criminal
   prohibition on sexual assault, as everyone is presumed to know

25 the law.  There is no basis from which to conclude that the
   unconstitutional consequences of failing to train police officers

26 not to commit sexual assault are so patently obvious that the
   County or Baca were deliberately indifferent" (citing United

27 States v. Budd, 144 U.S. 154, 163 (1892))).

28

                                7

1    reprimanded).

2          Second, plaintiff alleges that Reynolds is "not the

3    only deputy in the Office known to have accosted women on the job

4    in recent memory" (FAC ¶ 1), that there is a general history of

5    sexual misconduct toward women by County personnel (id. ¶ 67),

6    and that "gender discrimination and accusations of cover-ups to

7    protect peace officers from accusations of wrongdoing has led to

8    public departures by prominent staff" (id. ¶ 1). Specifically,

9    she points to the resignations of two medical examiners who

10   protested the office's failure to hold law enforcement

11   accountable for misconduct.  (Id. ¶¶ 68, 100.)  These

12   resignations, particularly given the alleged reasons behind them,

13   lend credence to the existence of a widespread custom of failing

14   to punish misconduct.

15         Third, Reynolds's own alleged comments to plaintiff

16   about "officers stick[ing] together" (id. ¶ 41), and plaintiff's

17   further allegations that women working for the Sheriff's Office

18   fear reporting incidents of sexual misconduct against police

19   officers because of a culture of fear and intimidation (id. ¶¶

20   99-100), further support an inference of a well-settled custom of

21   protecting wrongdoers within the department.

22         At the pleading stage, plaintiff need not prove the

23   existence of such a custom, but merely allege sufficient facts to

24   make the claim plausible.  See Starr v. Baca, 652 F.3d 1202, 1216

25   (9th Cir. 2011); see also AE ex rel. Hernandez v. County of

26   Tulare, 666 F.3d 631, 637 (9th Cir. 2012) (no heightened pleading

27   standard for Monell claims).  Taking all of plaintiff's

28   allegations as true and drawing all reasonable inferences in her

favor, as the court must at this stage, plaintiff has plausibly alleged a custom of failing to punish sexual offenders within the Sheriff's Office.  While further factual development may be necessary to ultimately prove this claim, plaintiff's allegations are sufficient to survive a motion to dismiss.  Accordingly, the court will not dismiss this claim.

IT IS THEREFORE ORDERED that defendants' motion to dismiss (Docket No. 12) be, and the same hereby is, DENIED.

Dated:  August 6, 2024

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE